

FILED
2/17/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 24 CR 142 |
| v. | |
| MICHAEL BENTLEY | Judge Jeffrey I. Cummings |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant MICHAEL BENTLEY, and his attorney, JONATHAN BEDI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with possession with intent to distribute a controlled substance, namely, a quantity of cocaine base, in violation of Title 21, United States Code, Section 841(a)(1) (Count 1); possession with intent to distribute a controlled substance, namely, a quantity of heroin, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 2, 7, and 8); possession with intent to distribute a controlled substance, namely, a quantity of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Count 3); possession with intent to distribute a controlled substance, namely, a quantity of heroin and a quantity of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 4, 5,

and 6); and possession with intent to distribute a controlled substance, namely, a quantity of heroin, a quantity of cocaine base, and a quantity of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Count 9).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count 9, which charges defendant with knowingly and intentionally possessing with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count 9 of the indictment. In pleading guilty, defendant admits the

2

following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about February 18, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, defendant MICHAEL BENTLEY did knowingly and intentionally possess with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

More specifically, no later than approximately August 1, 2017, BENTLEY began assisting Individual A in the operations of a darknet store called ALLGOLDEVERYTHING (the "Store"), which advertised the sale of controlled substances on multiple darknet marketplaces, including Empire Market, DarkMarket, and Dream Market. The Store sold heroin, powder cocaine, crack cocaine, and MDMA, which BENTLEY and Individual A distributed to narcotics customers through the mail. BENTLEY and Individual A packaged the narcotics ordered by the Store's customers and mailed the parcels to customers from post offices located in the Chicago area.

By approximately October 31, 2018, BENTLEY assumed sole control over the Store's operations. After taking over the Store's operations, BENTLEY packaged the

3

narcotics inside the parcels and mailed them from post offices in the Chicago area to the Store's narcotics customers. While driving to post offices to mail the narcotics, BENTLEY utilized a 2007 Nissan Murano (the "Murano"), a 2015 Mercedes-Benz S550 coupe (the "Mercedes"), and rental cars. BENTLEY acknowledges that he distributed the following controlled substances to the Store's narcotics customers through the mail, as summarized below:

| DATE | POST OFFICE MAILING LOCATION | CONTROLLED SUBSTANCE | QUANTITY |
|---|---|---|---|
| May 14, 2019 | Chicago | Cocaine Base | .96 grams |
| November 6, 2019 | Chicago | Heroin | 3.9 grams |
| December 12, 2019 | Chicago | Cocaine | .98 grams |
| December 16, 2019 | Oak Park | Heroin<br><br>Cocaine | 15.9 grams<br><br>.97 grams |
| January 7, 2020 | Evanston | Heroin<br><br>Cocaine | .97 grams<br><br>6.5 grams |
| January 20, 2020 | Niles | Heroin<br><br>Cocaine | 1 gram<br><br>1 gram |
| February 10, 2020 | Niles | Heroin<br><br>Cocaine | 1.9 grams<br><br>10 grams |
| February 14, 2020 | Chicago | Heroin | 3 grams |

BENTLEY further acknowledges that, on or about January 20, 2020, a person who, unbeknownst to BENTLEY, was an undercover law enforcement official (the "UC") purchased approximately 1 gram of heroin and approximately 1 gram of cocaine from the Store on the Empire Market. The UC paid BENTLEY approximately $70 for the cocaine and approximately $105 for the heroin in the form of

4

cryptocurrency, and the UC gave the Store a mailing address in Chicago for the transaction (the "UC Mailing Address"). That evening, at approximately 9:55 p.m., BENTLEY drove to a post office located in Niles, Illinois and deposited a parcel that contained the heroin and cocaine purchased by the UC into the mail. BENTLEY acknowledges that the United States Postal Service (the "USPS") delivered the parcel of narcotics to the UC Mailing Address on or about January 24, 2020.

On approximately February 10, 2020, the UC purchased approximately 1 gram of heroin from the Store on the DarkMarket marketplace for approximately $105 in cryptocurrency. The UC gave the Store the UC Mailing Address for the transaction. That same day, at approximately 12:42 p.m., BENTLEY drove to a post office in Oak Park, Illinois, and mailed a parcel that contained the heroin purchased by the UC. BENTLEY also deposited into the mail approximately 24 additional parcels of narcotics addressed to the Store's other narcotics customers. Law enforcement officials seized five parcels from the outbound mail, including the parcel that BENTLEY addressed to the UC, which contained a total of approximately 1.9 grams of heroin and 10 grams of cocaine.

On or about February 18, 2020, BENTLEY possessed in his residence, located on the 300 block of East Ontario Street in Chicago, (the "Bentley Residence") approximately 90 grams of heroin, 24 grams of cocaine base, 77 grams of cocaine, and 15.5 grams of MDMA, which BENTLEY intended to distribute to the Store's customers for a profit. BENTLEY also possessed in the Bentley residence a Dell

5

Inspiron computer bearing serial number J1SZ1P2, which identified narcotics orders that BENTLEY fulfilled through the Store from approximately January 9, 2020 through February 17, 2020.

Additionally, on approximately February 19, 2020, BENTLEY possessed within the Murano an Armscor 200 .38 special revolver bearing serial number AP1315437, a Remington 870 Super Express Magnum shotgun bearing serial number AB392633A, and associated ammunition.

BENTLEY acknowledges that, in total, from in or around August 1, 2017, through in or around February 18, 2020, BENTLEY possessed with intent to distribute and distributed approximately 5,261 grams of heroin, 480 grams of cocaine base, 7,511 grams of cocaine, and 18.5 grams of MDMA.

<strong><u>Maximum Statutory Penalties</u></strong>

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least three years, and up to any number of years, including life.

    b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2024 Guidelines Manual.

7

b. **Offense Level Calculations.**

i. The amount of the controlled substances involved in Count 9 and the relevant conduct for which defendant is accountable is approximately 5,261 grams of heroin, approximately 480 grams of cocaine base, approximately 7,511 grams of cocaine, and approximately 18.5 grams of MDMA. Pursuant to Application Note 8(B) to Guideline § 2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted to its converted drug weight, combined, and then referred to the Drug Quantity Table in § 2D1.1 to obtain the combined offense level. Combining the converted drug weight for the heroin, cocaine, cocaine base, and MDMA for which defendant is accountable equals approximately 8,486 kilograms of Converted Drug Weight, which is at least 3,000 kilograms, but less than 10,000 kilograms of Converted Drug Weight. Therefore, the base offense level for Count 9 and the relevant conduct for which defendant is accountable is 32, pursuant to Guidelines § 2D1.1(a)(5) and 2D1.1(c)(4).

ii. Pursuant to Guideline § 2D1.1(b)(1), the offense level is increased by two levels because defendant possessed a dangerous weapon, specifically the two firearms that defendant possessed in the Murano on approximately February 19, 2020.

iii. Pursuant to Guideline § 2D1.1(b)(7), the offense level is increased by two levels because defendant distributed a controlled substance through mass-marketing by means of an interactive computer service.

8

iv.     The government understands that defendant will truthfully admit the conduct comprising the offense(s) of conviction, and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts

9

now known to the government, defendant's criminal history points equal 1 and defendant's criminal history category is I:

> i. On or about May 17, 2021, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois (Case No. 19 CR 034301), and sentenced to two years of probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government anticipates the offense level to be 33 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 135 to 168 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. The Sentencing Guidelines Manual currently in effect, namely, the 2024 Guidelines Manual, contains a powder-to-crack cocaine disparity. The Department of Justice supports elimination of the powder-to-crack sentencing disparity and will therefore advocate for a sentence consistent with the Guidelines for powder cocaine rather than crack cocaine. The Court may, consistent with the law and current sentencing framework, consider the powder-to-crack disparity in assessing the section 3553(a) factors at sentencing.

f. If crack cocaine was treated as powder cocaine under the Sentencing Guidelines Manual currently in effect, then the base offense level would

be 32, pursuant to Guideline § 2D1.1(a)(5), (c)(4), and § 2D1.1 Application Note 8(D), because approximately 5,261 grams of heroin, 7,991 grams of cocaine, and 18.5 grams of MDMA is the equivalent of approximately 6,868 kilograms of converted drug weight, which is at least 3,000 kilograms, but less than 10,000 kilograms of converted drug weight. The applicable Sentencing Guidelines range, after the reduction for timely acceptance of responsibility, would be 135 to 168 months of imprisonment, in addition to any supervised release and fine the Court may impose.

g.    Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

11

10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

### Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $280 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Defendant further agrees to waive and abandon any right, title, or interest he has in the following property that law enforcement officials seized from the Bentley Residence on February 18, 2020: a Dell Inspiron computer bearing serial number J1SZ1P2; an Apple iPhone X Model MQAM2LL/A; a black 128 GB USB; a red 16 GB Micro Center USB; a black 4GB Micro Center USB; a 16 GB SanDisk Cruzer Glide USB; and a blue and white 64 GB USB. Defendant also agrees to waive and abandon any right, title, or interest he has in the following property seized from defendant's Nissan Murano vehicle on approximately February 19, 2020: a Armscor 200 .38 special revolver bearing serial number AP1315437; a Remington 870 Super Express Magnum shotgun bearing serial number AB392633A; and associated ammunition. Defendant understands that the government, after publication of notice to any others who may have an interest in the property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

13

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 24 CR 142.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

14

## Waiver of Rights

19.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

15

The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed.

16

Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information,

17

may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

18

25.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

19

28.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___9/23/25.___

ANDREW ERSKINE
Digitally signed by ANDREW ERSKINE
Date: 2025.09.15 10:25:07 -05'00'

_____
Signed by Andrew C. Erskine on behalf of
ANDREW S. BOUTROS
United States Attorney

_____
ERIN KELLY
Assistant U.S. Attorney

X _____
MICHAEL BENTLEY
Defendant

_____
JONATHAN BEDI
Attorney for Defendant

20